

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ROLANDO XAVIER VAZQUEZ, §
    PLAINTIFF, §
     §
VS. § CIVIL ACTION NO. 4:19-CV-113-A
     §
ANDREW SAUL, COMMISSIONER OF §
SOCIAL SECURITY ADMINISTRATION, §
    DEFENDANT. §

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

#### I. STATEMENT OF THE CASE

*Pro-se* plaintiff Rolando Xavier Vazquez ("Vazquez") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Vazquez was first found disabled for SSI benefits as a child on July 12, 2013, with an established onset date of March 1,

1

2012. (Tr. 40.) Vazquez turned eighteen years old on April 29, 2015.[1] (Transcript ("Tr.") 10, 12.) Upon redetermination of his disability as an adult, as required by the SSA, Vazquez was found no longer disabled as of November 1, 2015. (Tr. 10, 12; *see* 20 C.F.R. § 416.987(a).) After this determination was affirmed on reconsideration, Vazquez filed a request for a hearing. (Tr. 10; *see* Tr. 110.) The Administrative Law Judge ("ALJ") held a hearing on December 20, 2017 and issued a decision on April 30, 2018 affirming that Vazquez was no longer disabled as of November 1, 2015. (Tr. 10–20; *see* Tr. 38–57.) Thereafter, the Appeals Council denied Vazquez's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1–4.) Vazquez subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. §§ 1381–1383(f), of the SSA. In addition, numerous regulatory provisions govern SSI benefits. *See* 20 C.F.R. Pt. 416. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920.

First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 416.920(b). Substantial gainful activity is defined as work activity involving the use of

---

[1] The Court notes that the Administrative Law Judge indicated in his decision that Vazquez turned eighteen years old on April 28, 2015. (Tr. 12.) However, other records in the transcript indicate that Vazquez's actual birthdate is on April 29. (*See, e.g.*, Transcript 141, 155, 163.)

2

significant physical or mental abilities for pay or profit. *See* 20 C.F.R. § 416.910; *see also* §§ 416.971–416.976. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404. Subpt. P, App. 1. 20 C.F.R. § 416.920(d). Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 416.920(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experience. *Id.* § 416.920(g); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Carey*, 230 F.3d at 135; *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* But if the Commissioner meets this burden, it is up to the claimant to then show that he cannot perform the alternate work suggested. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). An ALJ's decision is not subject to reversal,

even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris*, 209 F.3d at 417 (citing *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Hollis*, 837 F.2d at 1383 (citing *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir. 1987)).

### III. ISSUES

While difficult to determine, it appears that Vazquez's only issue is whether substantial evidence supports the ALJ's decision that Vazquez was no longer disabled as of November 1, 2015. (*See* Plaintiff's Brief ("Pl.'s Br.") at 1.)

### IV. ALJ DECISION

In his April 30, 2018 decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 10–20.) The ALJ first noted that Vazquez was eligible for SSI benefits as a child until November 1, 2015 based on a redetermination of disability under the rules for adults who file new applications. (Tr. 12 (emphasis omitted).) The ALJ further found that, since November 1, 2015, Vazquez suffered

4

from the following severe impairments: (1) post-traumatic stress disorder ("PTSD"), (2) generalized anxiety disorder with agoraphobia, and (3) attention-deficit/hyperactivity disorder ("ADHD"). (Tr. 12.) Next, the ALJ held that none of Vazquez's impairments, or combination of impairments, met or equaled the severity of any impairments in the Listing. (Tr. 13–14.) As to Vazquez's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that since November 1, 2015, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The individual is able to understand, remember, and apply one to two step instructions in a simple and routine work environment, can make judgments only on one to two step work related decisions, with no contact with the public, and only occasional and incidental contact with co-workers. He can interact appropriately with supervisors.

(Tr. 14 (emphasis omitted).) The ALJ then noted that Vazquez had no past relevant work. (Tr. 18.) Subsequently, the ALJ opined at step five, based on Vazquez's RFC, age, education, and work experience and the testimony of a vocational expert ("VE"), that Vazquez was capable of performing a significant number of jobs that existed in the national economy, including hand packager, laundry worker, and machine tender. (Tr. 19.) Consequently, the ALJ found that Vazquez's disability ended on November 1, 2015 and Vazquez had not become disabled again since that date. (Tr. 19–20.)

## V. DISCUSSION

To determine whether the ALJ erred in finding Vazquez was not disabled after November 1, 2015, the Court must evaluate whether the ALJ applied the correct legal standards and whether the ALJ's decision is supported by substantial evidence. Because Vazquez presented no actual arguments in his brief, the Court will review whether there is substantial evidence to support: (1)

the ALJ's RFC determination and (2) the ALJ's decision at step five that there were jobs available in the national economy that Vazquez could perform.[2]

A. **RFC Determination**

The first issue is whether there is substantial evidence to support the ALJ's RFC determination. RFC is what an individual can still do despite his limitations.[3] (Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996); *see* 20 C.F.R. § 416.945.) It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[4] factors to be considered and is based upon all of the relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

---

[2] While Vazquez did not raise any arguments that the ALJ erred at step three in finding that none of Vazquez's mental impairments met or equaled an impairment in the Listing, the Court notes that the ALJ used the correct legal standard in evaluating Vazquez's impairments pursuant to sections 12.06, 12.11, and 12.15 of the Listing. (Tr. 13–14.)

[3] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[4] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 416.929; SSR 96-8p, 1996 WL 374184 at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *Id.* The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (per curiam) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704 (quoting *Harris*, 209 F.3d at 417 (quoting *Ripley*, 67 F.3d at 555 and citing *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988))) (footnotes and quotation marks omitted).

As noted above, the ALJ found that, since November 1, 2015, Vazquez had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: (1) able to understand, remember, and apply one to two step instructions in a simple and routine work environment; (2) make judgments only on one to two step work-related decisions with no

7

contact with the public and only occasional and incidental contact with co-workers; (3) can interact appropriately with supervisors. (Tr. 14.) In making his RFC determination, the ALJ considered, *inter alia*, the following evidence: (1) Vazquez's testimony at the hearing (Tr. 15); (2) a June 8, 2013 psychological consultative examination in which Michael Bridgewater, Ph.D., noted that Vazquez had low energy levels with a good memory and diagnosed Vazquez with major depressive disorder and general anxiety disorder (Tr. 16–17; *see* Tr. 315–21); (3) a September 18, 2015 psychological consultative examination in which Deborah Gleaves, Ph.D., diagnosed Vazquez with PTSD and noted that Vazquez had the ability to follow one and two step commands but had "difficulty dealing with normal pressures in [a] competitive work setting" (Tr. 17; *see* Tr. 16–17, 341–47); (4) a treatment record dated December 3, 2105 from UNT Health Patient Services in which Long T. Hoang, D.O., indicated that Vazquez's psychiatric exam findings were normal for orientation to time, place, person, and situation as well as appropriate mood and effect (Tr. 16; *see* Tr. 390); (5) psychology progress treatment records dated in August and September 2015 indicating that Vazquez's condition had shown improvement; (Tr. 17; *see* Tr. 410–11); (6) testimony from Vazquez's mother, Ilka S. Marrero, that Vazquez would lay down in the fetal position for days when pressured to do something (Tr. 17–18); and (7) an Accommodation Acceptance Form from Tarrant County College indicating that Vazquez receive "Audio Recording" as an accommodation but that he was expected to do the same work as any other student. (Tr. 18; *see* Tr. 296.)

In making his RFC determination, the ALJ, *inter alia*, stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

These facts in the record do not dispute that the claimant has conditions, which singly or in combination, may cause some of his alleged symptoms. What these pieces of evidence suggest is that the claimant's symptoms may not be accurately reported and may not exist at the level of severity assumed by the claimant's testimony at hearing. Particularly considering the evidence supports that the claimant actually has relatively insignificant problems when it comes to attention and concentration. Here, it was noted the teachers always told his mother that his behavior was "alright," but he had a very hard time concentrating and completing his class work. However, on mental status examination, the claimant periodically revealed only minor attention problems. When given a simple 5-part task to perform from immediate memory, he performed three parts correctly. He was able to add serial 3s, subtract serial 3s from 20, add serial 3's, and subtract serial 7s from 100. In addition, his thought process was mostly lucid, logical, and concrete. The claimant's energy level throughout the evaluation was in the low range, but his memory appeared to be good.

In August and September 2015, the claimant's medical providers indicated that the claimant had demonstrated improvement. Furthermore, in September 2015, at his subsequent psychological consultative examination, the claimant expressed his thoughts in a coherent, logical, and relevant manner. There were no obvious loose associations, tangents, perseverations, or flight of ideas. The claimant needed instructions for serial 3's repeated and clarified, but he performed this task slowly with prompting and with no mistakes. The claimant could repeat 5 digits forward and 3 digits backward. The claimant learned a list of 3 words after 1 repetition. He could recall 2 out of 3 words after a 5-minute interval. Prompting improved his performance to 3 out of 3. The claimant correctly named the current president of the United States. His mood was anxious and depressed with appropriate affect, but he was fully oriented. Finally, by December 3, 2015, the claimant was oriented to time, place, person, and situation. His mood and affect were appropriate. Therefore, the undersigned finds that these mental status examinations support the residual functional capacity above as it relates to the claimant's ability to perform one to two step tasks.

On September 18, 2015, Dr. Deborah Whitehead Gleaves opined as follows: The claimant has the ability to understand, carry out, and remember one and two step commands but would struggle with complex instructions. He has limited ability to sustain concentration and persist in work related activity at a reasonable pace[,] will struggle to maintain effective social interaction on a consistent and independent basis with supervisors, coworkers, and the public and will have difficulty dealing with normal pressures in the competitive work setting.

9

The undersigned gives Dr. Gleaves' opinion little weight. Although the undersigned agreed that the claimant is limited to one and two step commands, the undersigned does not concur with Dr. Gleaves' assessment that the claimant has a limited ability to sustain concentration and persist at a reasonable pace. This finding is inconsistent with the findings in the mental status examination where, although the claimant needed instructions for serial 3's repeated and clarified, he was able to perform the task with no mistakes. The claimant also was able to repeat 5 digits forward and 3 digits backward. The claimant learned a list of 3 words after 1 repetition. He could recall 2 out of 3 words after a 5-minute interval, and prompting improved his performance to 3 out of 3.

The undersigned did concur with Dr. Gleaves' conclusion that the claimant would have problems maintaining effective social interaction with the public and this was taken into consideration in limiting the claimant to no contact with the public. However, the undersigned did not find the claimant would have the same difficulty dealing with supervisors and coworkers as demonstrated by his ability to attend college and maintain passing grates. Furthermore, the undersigned agrees that the claimant will have difficulty dealing with normal pressures in the competitive work setting, but not insofar as it would preclude all competitive employment.

. . . .

The undersigned determined that the claimant's symptoms have no substantial effect on his ability to work beyond the functional limitations and restrictions indicated by the medical evidence. The claimant's allegations, including his testimony, were not supported by and were inconsistent with the medical evidence. Therefore, the undersigned found that his nonexertional capabilities were compromised, but not to the degree alleged. Given the objective medical evidence in the record, the undersigned finds the claimant's residual functional capacity is reasonable, and the claimant could function within those limitations without experiencing significant exacerbation of his symptoms.

(Tr. 16–18 (internal citations omitted).)

In this case, the ALJ specifically discussed or referenced Vazquez's diagnosis of major depressive disorder, general anxiety disorder, and PTSD in 2013 and 2015, as well as more recent psychiatric exams showing improvement with normal findings. (Tr. 16–17; *see* Tr. 315–21, 341–47, 390, 409.) In addition, as set forth above, the ALJ thoroughly considered all the evidence in the record before making an RFC assessment, adequately explained his reasoning for

the assessment, and exercised his responsibility as factfinder to incorporate limitations into his RFC assessment as supported by the record. Because there is substantial evidence in the record that supports the ALJ's disability determination, the Court concludes that the ALJ did not err and remand is not required.

## B. Step Five Determination

The last issue is whether substantial evidence supports the ALJ's decision at step five. When, as here, the ALJ decides at step five that there are other jobs in existence in significant numbers in the national economy that the claimant can perform, that decision must be supported by substantial evidence. *Allsbury v. Barnhart*, 460 F. Supp. 2d 717, 721 (E.D. Tex. 2006). To make this determination an ALJ considers relevant vocational factors, including a claimant's age. *See* 20 C.F.R. §§ 416.920(a)(4)(v), 416.963(a); *Stout v. Astrue*, No. 10-4466, 2012 WL 1020179, at *3 (E.D. La. Feb. 22, 2012). Typically, the Commissioner satisfies this burden at step five in one of two ways. *Allsbury*, 460 F. Supp. 2d at 721; *see Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The first way is that the Commissioner can receive testimony from a vocational expert or consider similar vocational resource evidence. *Allsbury*, 460 F. Supp. 2d at 721. The second way is that the "Commissioner can take administrative notice of [the] availability of alternative work by consulting predetermined findings contained in 'Medical Vocational Guidelines,' commonly called '*the grids*.'".[5] *Id.*

At step five in this case, the ALJ stated:

> Since November 1, 2015, the claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. To

---

[5] The grids consist of three tables (for sedentary, light, and medium work) which may be consulted once a claimant's RFC capacity is determined. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201–203. The tables direct conclusions of disability or non-disability based upon claimant's age, education, and previous work experience. *Id.*

11

> determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity, since November 1, 2015. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as hand packager with 752,000 jobs in the national economy, laundry worker with 894,000 jobs in the national economy, and machine tender with 367,000 jobs in the national economy.
>
> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, since November 1, 2015, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical Vocational Guidelines.

(Tr. 19.)

Based on the foregoing, it is clear that the ALJ appropriately relied on the VE's testimony at step five in finding that there were a significant number of jobs in the national economy that Vazquez could perform. Moreover, Vazquez has pointed to no inconsistencies between the RFC assessment and the VE's testimony. Because Vazquez does not dispute his capacity to perform any of the jobs presented by the VE and substantial evidence supports the ALJ's determination at step five, the Court concludes that remand is not required.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **September 11, 2019** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 28, 2019.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv